UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECIL BRHEATH SCWARZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TOWN OF FAIRFAX, et al., <br><br> Defendants. | Case No. 25-cv-06395-RS <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Once upon a time, local governments in the American West could not enforce public camping ordinances against unhoused folks who lacked access to alternative shelter—i.e., whenever "there [wa]s a greater number of homeless individuals in a jurisdiction than the number of available beds in shelters." *Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019). This protection, according to the Ninth Circuit, sprouted from the Eighth Amendment's Cruel and Unusual Punishments clause. In 2024, however, the U.S. Supreme Court overturned *Martin*. *See City of Grants Pass v. Johnson*, 603 U.S. 520 (2024). Following that decision, California Governor Gavin Newsom issued an executive order encouraging local towns "to humanely remove encampments from public spaces." *See* California Executive Order N-1-24.

This case exemplifies the aftermath of *Martin*'s reversal. Plaintiffs Cecil Brheath Scwarz and John Doe, two people who currently camp on public property in the town of Fairfax, California, face the imminent abatement of their campsite under Fairfax's public camping ordinance. Upon receiving a 72-hour notice, Plaintiffs sued the town and its town administrator,

seeking to stop Fairfax from making them move.  No longer able to rely on the Eighth Amendment, Plaintiffs raise two claims—one under the state-created danger doctrine of the Fourteenth Amendment, and one pursuant to the Americans with Disabilities Act.  As relief, Plaintiffs now move for a preliminary injunction.  As explained below, the motion is denied.

## II. BACKGROUND

In January 2025, Fairfax passed an ordinance that prohibits any person from camping or maintaining an encampment on public property.  *See* Dkt. No. 17-1, Fairfax Mun. Code ("FMC") § 9.30.050(A).  Under the ordinance, the town manager may abate encampments—that is, clear them—after providing 72-hours written notice; any items left behind during abatement must be stored, and the town manager must post notices on where individuals can collect said items.  Moreover, if anyone is present at the encampment during abatement, the town manager "shall evaluate reasonable requests for additional time or assistance to remove items and may accommodate those requests to the extent practicable."  FMC 9.30.060(B)(1).  To date, Fairfax has never abated an encampment.

Plaintiffs live at "Camp Liberty" aka "Camp Integrity," on public property near Fairfax's police station.  They aver that two others live in the camp with them; Scwarz has apparently lived there for "many months" while Doe has apparently arrived only recently.  A third person at the camp, Shaylee Koontz, previously sued the Town to prevent it from abating Camp Liberty; her request for a preliminary injunction was denied.  *Koontz v. Town of Fairfax*, No. 25-cv-01311-RFL, 2025 WL 1766046, at *1 (N.D. Cal. Apr. 1, 2025).  Dismissal followed.  *See Koontz v. Town of Fairfax*, No. 25-CV-01311-RFL, 2025 WL 2021883, at *1 (N.D. Cal. July 18, 2025).

On July 23, five days after Koontz's case was dismissed, Plaintiffs here submitted accommodation requests related to abatement at Camp Liberty, which Koontz now appears to join.  Scwarz cited Lyme disease and post-traumatic stress disorder ("PTSD") as grounds to provide 30 days' notice before clearing the camp and an interactive process to mitigate foreseeable dangers attributable to abatement.  Doe also cited PTSD, *inter alia*, as a disability and requested the same accommodations.  Fairfax rejected the requests for accommodations because no abatement notice

had yet been posted. On July 28, Plaintiffs requested an in-person meeting for an interactive process, and Defendants agreed to participate over Zoom during a meeting on July 30. In the meantime, on July 29, Defendants posted a 72-hour notice to vacate the encampment.

On July 30, Plaintiffs' representatives met with the Town Manager, Defendant Heather Abrams, to discuss the requested accommodations. Representatives for Fairfax explained they would provide a written response to the requests later that day, but before Defendants could follow through with that promise, Plaintiffs filed the present lawsuit.

Later that day, Defendants issued a letter response to Plaintiffs' requested accommodations. *See* Abrams Decl., Ex. J, Dkt. No. 18-9. The letter granted or partially granted 5 out of 11 requests, providing access to public restrooms, drinking water, assistance of support groups during abatement, storage of belongings for up to 90 days (150 days were requested; the ordinance provides for just 30 days' storage), and a truck plus driver to facilitate the moving of personal belongings. The town denied Plaintiffs' other requests which included, *inter alia*, an alternative location near the police station to camp; city programs to mitigate mental and physical health issues; creation of a new program to shelter unhoused people; development of a new police officer practice that would prohibit briefly detaining people for questioning when an officer has a reasonable suspicion that criminal activity is ongoing; and 30 days' advance notice prior to any abatement. The letter provided full reasoning for each decision.

When Plaintiffs filed suit, they simultaneously sought a temporary restraining order to prohibit Defendants from abating the camp. The motion was granted, and Defendants were barred from acting on the notice to vacate that they posted at Camp Liberty. Following a hearing, the order was revised on August 6 so that it applies only to those present at the camp as of July 31 who are not otherwise subject to any prior judicial determination. The TRO expires on August 20. *See* Fed. R. Civ. Pro. 65(b)(2).

### III. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

ORDER DENYING PRELIMINARY INJUNCTION
CASE NO. 25-cv-06395-RS

*Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit employs an alternative "sliding scale" approach in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

## IV. DISCUSSION

As explained below, Plaintiffs have little to no likelihood of succeeding on their state-created danger claim or their ADA claim. Even under the Ninth Circuit's sliding scale approach to preliminary injunctions, no degree of strength in showing any of the other *Winter* factors could offset the fact that there are no serious questions going to the merits. The motion for a preliminary injunction is therefore denied.

### A. State-Created Danger

Plaintiffs fail to satisfy the requisite showing for preliminary injunctive relief on their state-created danger claim. For better or worse, no fundamental right to housing nor right to governmental aid exists—not "[e]ven where such aid may be necessary to secure life, liberty, or property." *DeShaney v. Winnebago Cnty. Dept. of Soc. Serv.*, 489 U.S. 189, 196 (1989). The state-created danger theory nevertheless permits claims where the state (1) affirmatively acts to create or expose the plaintiff to actual, particularized dangers that she would not otherwise confront, and (2) in so doing, acts with deliberate indifference to the known, obvious danger. *See, e.g.*, *Wills v. City of Monterey*, 617 F.Supp.3d 1107, 1122–23 (N.D. Cal. 2022); *see also Cobine v. City of Eureka*, 250 F.Supp.3d 423, 432 (N.D. Cal. 2017). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bryan County v. Brown*, 520 U.S. 397, 410 (1997). The danger must be more than speculative. *Estate of Amos v. City of Page*, 257 F.3d 1086, 1091 (9th Cir. 2000).

Here, Plaintiffs fail to show actual, particularized dangers that they would not otherwise

ORDER DENYING PRELIMINARY INJUNCTION
CASE NO. 25-cv-06395-RS

confront. The risks of camping outside and having little to no access to clean bathroom and vital services are certainly severe, but the state's action to abate the campsite in one particular location is not creating those risks. *See Hous. is a Hum. Right Orange Cnty. v. Cnty. of Orange*, No. 19-cv-388-PA-JDEx, 2019 WL 6481311, at *12 (C.D. Cal. Aug. 12, 2019) ("[T]he difficulties the homeless individuals camping at the temporary campground may face are largely identical to those they would face while camping elsewhere…."). The same is true for gender-based violence. Indeed, Scwarz claims to have experienced harassment, stalking, and threats of violence while living at Camp Liberty, the very place she seeks to stay.

Moreover, Plaintiffs have not shown the Town's conduct to be deliberately indifferent. The Town provided notice, met with Plaintiffs' representatives, and has continued to participate in alternative dispute resolution. The Town also agreed to store belongings for longer than required by the ordinance and to provide a moving truck and driver. It will continue to provide access to its bathrooms and other pre-existing public services. Because Plaintiffs are already exposed to the dangers they highlight, it is implausible to suggest Fairfax has disregarded any obvious *consequence* of its actions.

In short, there are no serious questions about the merits of Plaintiffs' state-created danger claim. Plaintiffs urge a different conclusion by citing to *Alfred v. City of Vallejo*, No. 2:24-cv-3317-DC-SCR, 2025 WL 435900 (E.D. Cal. Feb.7, 2025). In that case, however, the plaintiff lived in a self-constructed shelter—one with a raised floor, windows, insulated roofing, a bathroom and shower, a locking door, and a solid wood structural frame. *Id.*, at *1. The planned abatement was "likely to expose [the plaintiff] to more dangerous conditions than she currently faces by depriving her of protection from the elements, hygiene facilities, and access to life essentials creating a known and particularized danger to Plaintiff's safety and welfare." *Id.*, at *9. It was also wintertime. *Id.* The situation here is different: it is August, and no evidence suggests Camp Liberty to be the sort of structure at issue in *Alfred*. To the contrary, the encampment here appears to be just that: a camp. No doubt housing would be better for all involved, but the town's

enforcement of its ordinance is unlikely to create any dangers that Plaintiffs do not already face.[1]

**B. ADA**

Plaintiffs also fail to satisfy the requisite showing for preliminary injunctive relief as to their ADA claim. Under the relevant statute, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. By regulation, a public entity such as Fairfax must make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination based on disability." 28 C.F.R. § 35.130(b)(7). "Reasonable modifications" mean those "that would not fundamentally alter the nature of the service provided." *Where Do We Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 862 (9th Cir 2022); *see also* 28 C.F.R. § 35.130(b)(7). "[I]n no event is the entity required to undertake measures that would impose an undue financial or administrative burden . . . or effect a fundamental alteration in the nature of the service." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004).

To prove that Fairfax has violated the ADA's requirements, Plaintiffs must show they are qualified individuals with a disability; they were either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or otherwise discriminated against by the public entity; and that "such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Where, as here, a claim rests on a public entity's alleged failure to provide a reasonable accommodation under 28 C.F.R. § 35.130(b)(7), the claimant bears the additional burden of production to prove such accommodation exists. *See Sheehan v. City & Cnty. of San Francisco,* 743 F.3d 1211, 1232–33 (9th Cir. 2014). A public entity may defeat a reasonable accommodation claim by showing "that making the modifications would fundamentally alter the

---

[1] At oral argument, Plaintiffs' counsel maintained that abating the camp site will be a worse situation due to Camp Liberty's proximity to the police station and in light of Plaintiffs' disabilities, which may be exasperated by a forced move. The present record, however, does not support the finding that Fairfax's actions are "creating" new dangers.

ORDER DENYING PRELIMINARY INJUNCTION
CASE NO. 25-cv-06395-RS

nature of the service, program, or activity." *Where Do We Go Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 860 (9th Cir. 2022) (citing 28 C.F.R. § 35.130(b)(7)).

Plaintiffs have a low likelihood of success because they have no evidence that they are being discriminated against *because of* their PTSD and other conditions. *See Weinreich*, 114 F.3d at 978 ("The duty to provide "reasonable accommodations" under the ADA and the Rehabilitation Act arises only when a policy discriminates *on the basis of disability*.") The expected abatement results from their status as people living in an encampment, not from their disabilities. Ultimately, Plaintiffs seek accommodations that would keep them in their homes at Camp Liberty. This seems a reasonable aim, but under binding case law, the ADA's requirements for accommodation of people with disabilities recognize that an accommodation cannot "fundamentally alter" the nature of the program at issue. *See Where Do We Go Berkeley*, 32 F.4th at 862. "[P]ublic entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons." *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003) (citations omitted). Plaintiffs' requests to stay where they are would fundamentally alter the nature of Fairfax's abatement ordinance enforcement, and providing new housing or the full slate of services Plaintiffs request would be an entirely new program.

What's more, Plaintiffs do not show that the city has failed to provide reasonable accommodations within the abatement process. The complaint provides two requests for abatement-related accommodations: a 30-day notice before abatement to facilitate an interactive process, and help with moving. As noted above, Fairfax has agreed to provide a moving truck and driver as well as 90 days of storage, so the latter request is moot as granted. As for the 30-day notice period for an interactive process, Plaintiffs fail to acknowledge the extent to which Fairfax already engaged in one—indeed, that process was ongoing at the time this suit began. True, Fairfax used virtual, remote proceedings, over Plaintiffs' wishes. Yet, Plaintiffs were regularly conducting email correspondence via their representative; the Town had no reason to doubt their access to the internet was sufficient to engage through Zoom, and there is no indication the Town opted for Zoom because of Plaintiffs' conditions. It appears to have derived from a combination

of convenience and concerns about safety.  At any rate, Plaintiffs provide no explanation for why the interactive process should take 30 days.[2]

## V. CONCLUSION

This situation is troubling.  Plaintiffs ought to have a place to live and thrive.  Yet, the law is what it is, and here, Plaintiffs have raised no serious questions going to the merits of their claims.  Because Fairfax's planned abatement will not expose Plaintiffs to new dangers they do not already face, and because there is no evidence to suggest the town is acting with deliberate indifference, the Fourteenth Amendment state-created danger claim is unlikely to succeed on the merits.  As for the ADA claim, there appears to be no link between the abatement and Plaintiffs' disabilities, and Fairfax has engaged in an interactive process that indeed resulted in several accommodations being granted.  At bottom, the record in this case does not support granting the sought-after relief.  Plaintiffs' motion for a preliminary injunction is therefore denied.

**IT IS SO ORDERED**.

Dated: August 19, 2025

_____
RICHARD SEEBORG
Chief United States District Judge

---

[2] To their motion, Plaintiffs attach exhibits which suggest a claim that Fairfax is excluding them from a homelessness services partnership with the surrounding county and local non-profits.  As the town explains in opposition, these exchanges do not demonstrate that such efforts amount to any kind of public program from which Plaintiffs are excluded—to the contrary, the exchanges show that Defendants are actively reaching out to try to find alternative places for Plaintiffs to live that would not conflict with the ordinance.  Defendant has no power, by itself, to place Plaintiffs into housing.  Moreover, even if Fairfax's efforts could be couched as a program, there is no basis on which to conclude Plaintiffs are being excluded from it *because of* their disability.  To be sure, Fairfax is strongly encouraged to find housing solutions for Plaintiffs.